**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**DARNELL LUCAS,**

**Petitioner,**

**v.** **CASE NO. 16-3174-JWL**

**NICOLE ENGLISH, Warden,**
**USP-Leavenworth,**[1]

**Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner, a prisoner in federal custody at USP-Leavenworth ("USPL"), proceeds *pro se*. Petitioner challenges prison disciplinary proceedings. The Court issued an Order to Show Cause, Respondent filed an Answer and Return (Doc. 7) ("A&R"), and Petitioner filed a Traverse (Doc. 8). The Court also granted the parties leave to file a Reply (Doc. 11) and a Surreply (Doc. 12), and the matter is ready for resolution. The Court finds that Petitioner does not allege facts establishing a federal constitutional violation and denies relief.

## I. Background

Plaintiff is currently incarcerated with the Federal Bureau of Prisons ("BOP") at USPL. On October 5, 2011, Petitioner was sentenced in the U. S. District Court for the Southern District of Indiana, and is serving a 120-month sentence for Conspiracy to Possess with Intent to Distribute and To Distribute Cocaine Base (Crack), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Petitioner has a projected release date of October 25, 2018, via § 3621(e) Conditional

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nicole English is substituted for Jason Streeval as the Respondent in this action.

Release. Disciplinary proceedings at USPL for misuse of the telephones resulted in Plaintiff's loss of fourteen days of good time credit. Petitioner alleges the following grounds in his petition: (1) the Disciplinary Hearing Officer ("DHO") did not have "some evidence" to find him guilty; (2) the DHO violated procedures under 28 CFR 541.2–19 and *Wolff v. McDonnell*; and (3) the DHO violated 5 U.S.C. § 706 of the Administrative Procedures Act ("APA"). Petitioner did not specify the relief he seeks in his Petition but in his Traverse asks the Court to restore his fourteen days of good conduct time and remove the discipline from his record.[2] (Doc. 8 at 5.)

**II. Facts**

Respondent provided the administrative record of Petitioner's disciplinary proceedings with the A&R. The Court finds the following uncontroverted facts from the pleadings and exhibits of both parties. Petitioner arrived at USPL on August 28, 2013. Shortly after arriving at USPL, inmates are provided with a copy of the institution's Admissions and Orientation Handbook, which lists information for disciplinary charges by specific codes. The Admissions and Orientation Handbook in effect at that time is dated May 2013 ("Handbook"). Additional language in the Handbook relating to the use of the telephone states:

> **The purpose of this notice is to make sure all inmates are reminded of the rules governing the use of the telephone.** Please refer to Program Statement 5264.07, Telephone Regulations for Inmates, dated July 31, 2002,[3] if you are interested in reviewing the matter further. We want to do our best to assist inmates in being well informed so that foolish mistakes don't end up affecting privileges. If you have any questions, please contact your unit manager or the captain.…**It is your responsibility**, when you

[2] Petitioner does not dispute the BOP's blocking of the telephone numbers identified with his discipline. (Doc. 12 at 1.)

[3] The Handbook refers to Program Statement 5264.07, Telephone Regulations for Inmates, dated January 31, 2002. Respondent states that this appears to be an error, as the Inmate Telephone Regulations were updated in 2008, and the Handbook should have referred to Program Statement 5264.08, Inmate Telephone Regulations, dated January 24, 2008. The 2008 version of the Inmate Telephone Regulations was in place during the timeframe when Petitioner's violations occurred in 2015. *See Schick v. Apker*, No. 07 Civ. 5775-SHS-DF, 2009 WL 2016933, at *3 n.6 (S.D.N.Y. March 5, 2009) ("BOP Program Statement 5264.07 has now been superceded by Program Statement 5264.08, although the newer statement is not substantively different from the earlier version.").

> establish a telephone list or request a telephone number to be added to your approved telephone list, **that you provide accurate information indicating the correct name and your relationship to the individual you wish to be placed on your list.…**
>
> **You are responsible** for your own telephone use and will be held accountable for the entire content of each telephone call you make, such as any prohibited acts committed or disclosed during your telephone conversation.…Three-way calling, third party billing, and electronic transfer of an inmate's ITS call is prohibited.…Inmates face disciplinary action if the rules and regulations governing the proper use of the telephone are violated, or if this communication device is being used in a fraudulent or criminal manner. The following general examples serve as a guide. These examples do not attempt to detail every incident that could violate the Inmate Telephone Regulations.…
>
> **Code 297**: This will be used when you are found using the telephone for abuses **other than criminal activity, and which circumvent monitoring procedures**. Examples of infractions which meet the criteria for a code 297 incident report include, but are not limited to
>
> > -third party calling/third party billing/three way calls (note: inmates involved in unintentional call forwarding circumstances would not be included in this category as long as the inmate immediately terminates the call).

(Doc. 7–1 at 6; 61–62.) The Handbook also directs inmates to "feel free to ask any staff members for assistance, particularly unit staff, or to consult the law library to obtain information relative to particular questions." *Id*. at 63.

Program Statement 5264.08 provides that "[t]o ensure the safety and security of the institution and community, inmates must place all personal telephone calls through the ITS [Inmate Telephone System] and must not circumvent it via call forwarding, including automatic electronic forwarding or any similar telephone function." (Doc. 7–1, at 69).

On April 25, 2015, Petitioner replied to an e-mail from a company called DIPV Telecom. In e-mails to DIPV Telecom, Petitioner provided a list of long distance numbers for which he

needed DIPV Telecom to generate local numbers. DIPV Telecom e-mailed back on April 26, 2015, and provided Petitioner with local 913 area code telephone numbers to use to reach persons at the telephone numbers Petitioner supplied. Petitioner submitted two monetary transactions from his inmate account to DIPV Telecom—a $9.95 transaction on April 9, 2015, and an $18.95 transaction on May 8, 2015. Petitioner made several telephone calls to these 913 area code telephone numbers from April 8, 2015 to May 18, 2015. The calls were primarily listed as "friend" on the transaction.

On May 18, 2015, staff became aware of the incident and wrote an incident report ("IR 2716481") concerning the efforts of Petitioner to establish a non-identifiable call-forwarding system for multiple telephone numbers on his telephone list. IR 2715481 was written for Telephone Abuse, other than illegal activity, in violation of Code 297, and was delivered to Petitioner at approximately 2:16 p.m. on May 18, 2015. Petitioner's incident report was investigated that same day by staff. Petitioner was advised of his rights, including his right to remain silent, and he indicated he understood his rights and stated "I didn't know that was a 3-way phone call." Petitioner's discipline was referred to the Unit Discipline Committee ("UDC") for further disposition.

Petitioner appeared before the UDC on May 19, 2015, at 8:00 a.m., and stated "I did not know I was wrong." The UDC referred the matter to the DHO due to the serious nature of the incident and because sanctions are not available at the UDC level. Petitioner was given a copy of his Inmate Rights at Discipline Hearing on May 19, 2015. Included among these rights was the opportunity to have a staff representative assist with the Discipline Hearing, the right to present documentary evidence on Petitioner's behalf, and the right to present a statement to the DHO or remain silent. Petitioner signed this document.

On May 19, 2015, Petitioner was given a copy of the Notice of Discipline Hearing Before the DHO, which identified the specific violation code of 297. On that date, Petitioner indicated he did wish to have a staff representative appointed to assist him. He did not request any witnesses, and he signed the document.

A hearing was held before the DHO concerning IR 2716481 on May 27, 2015, nine days after Petitioner received his incident report from staff and eight days after receiving the notice of the hearing before the DHO. Petitioner had an opportunity to have a staff representative at the hearing. The Mentor Coordinator from Chaplain Services was appointed and appeared. The staff representative stated he met with Petitioner and discussed the discipline, he reviewed the e-mail from DIPV Telecom, he attempted to call their number to obtain additional information, and he did a phone search on the numbers listed and they all came up as "friend."

Petitioner appeared before the DHO, who advised Petitioner of his due process rights, which Petitioner indicated he understood. Petitioner made a statement before the DHO, stating "I didn't know it wasn't allowed. Dude gave me the email address and I tried the service." Petitioner had an opportunity to present documentary evidence, and presented an e-mail from DIPV Telecom dated May 13, 2015, concerning the organization and their interpretation that the call is appropriate under the BOP telephone monitoring system. Petitioner had an opportunity to present witnesses, but declined.

The DHO considered documentary evidence consisting of internet information about DIPV Telecom, including information that calls to the local number will ring on the cell or home telephone number of the individual called. The DHO also considered the January 7, 2010 Memorandum from D. Dodrill, Assistant Director Correctional Programs Division, which indicated certain Voice Over Internet Protocol ("VOIP") or other similar technology may violate

policy, including when the technology involves call forwarding. The DHO relied on the information from the memorandum where such technology may mask the identity of the destination telephone call recipient. The guidance indicated that such telephone numbers should be blocked.

The DHO also considered the April 14, 2011, clarification memorandum from C. Samuels, Assistant Director Correctional Programs Division, which indicated certain case by case numbers must be evaluated to see if the contact person or end user can be identified by the telephone number. The DHO considered documentary evidence including the internet search for telephone numbers for 913 area code numbers called by Petitioner and/or identified in the e-mail correspondence between Petitioner and DIPV Telecom, and considered the fact that the internet search did not identify an end-user by name, but merely identified the number as a Peerless Network Landline in Leavenworth, KS, or a Localphone Mobile in Leavenworth, KS. The DHO also considered a Lexis Nexis search for certain telephone numbers called by Petitioner and/or identified in the e-mail correspondence between Petitioner and DIPV Telecom, and the fact that the Lexis Nexis search did not identify any end user, but rather stated the results were "No documents were found."

The DHO considered all the evidence presented and determined that Petitioner committed the prohibited act as charged. The DHO considered the incident report, the statement by the reporting officer, the e-mails themselves, the incident report investigation, the statements of Petitioner at the investigation, UDC and DHO stages, as well as statements and documents presented by Petitioner's staff representative. Specifically, the DHO considered Petitioner's defense that he did not know he could not use the service. The DHO sanctioned Petitioner with the loss of fourteen days of good conduct time and the loss of sixty days of telephone privileges.

The sanction for the loss of good conduct time was below the guidelines, but was considered by the DHO sufficient to deter future misconduct. The DHO noted that the loss of phone privileges was imposed due to the relationship of the act to the particular privilege. Petitioner was advised of the DHO's findings and his ability to appeal through the administrative remedy process. The DHO subsequently generated a written report and signed it on June 1, 2015. A copy of the report was delivered to Petitioner by staff on June 10, 2015. The DHO was a certified DHO who was not personally involved with the incident, the UDC hearing, or any other part of the initial disciplinary process.

**III. Discussion**

**1. Exhaustion**

Generally, a federal prisoner must exhaust available administrative remedies before commencing a habeas corpus petition under 28 U.S.C. § 2241. *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam). The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542. Respondent acknowledges that Petitioner has exhausted his administrative remedies with respect to his discipline for telephone misuse. (Doc. 7 at 4.)

**2. Standard of Review**

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). A federal prisoner has a constitutionally protected liberty interest in his earned good-conduct time. *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987). Therefore, Petitioner was entitled to due process at his disciplinary hearing. *Howard v. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). However, because prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who

have been lawfully incarcerated for doing so," the "full panoply of rights due a defendant in [criminal] proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 561 (1974); *see also Abdulhaseeb v. Ward*, 173 F. App'x 658, 661 (10th Cir. 2006).

In *Wolff*, the Supreme Court held that in order to satisfy due process in a prison disciplinary proceeding, the inmate must receive: (1) "advance written notice of the claimed violation" no less than 24 hours prior to the hearing; (2) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 563–66 (citations omitted); *see also Abdulhaseeb*, 173 F. App'x at 661 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)); *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). The Supreme Court subsequently added that when "some evidence" supports the decision to revoke good time credits, the requirements of procedural due process have been met. *Hill*, 472 U.S. at 454; *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (review of disciplinary proceeding limited to whether BOP followed three steps mandated by *Wolff* and whether some evidence supported discipline.).

**3. Procedures**

The Court has no difficulty finding that Petitioner was afforded all the due process protections mandated by *Wolff v. McDonnell*. Petitioner baldly made this claim in his Petition but did not allege facts indicating which of the three procedural steps were denied and how. The administrative record and the undisputed facts plainly demonstrate to the contrary that Petitioner was afforded all three procedural protections mandated by *Wolff*. He was given advance written notice of the charge by delivery of IR 2716481 nine days prior to the DHO hearing. He was

advised of his procedural rights eight days before the DHO hearing and given the opportunity to present witnesses and documentary evidence in his defense. He declined to present witnesses but did present documentary evidence. Finally, he was provided a copy of the DHO's written statement, which sets forth the evidence relied upon and the reasons for the disciplinary action and sanctions.

In his Traverse, Petitioner alleges that the DHO was not impartial and that the staff representative failed in preparing evidence for the hearing before the DHO and failed to present the BOP's January 7, 2010 Memorandum. However, a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. *See Jordan v. Wiley*, 411 F. App'x 201, 209 (10th Cir. 2011) (Unpublished). Instead, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *See Wolff*, 418 U.S. at 570. Furthermore, any failure by the staff representative to present the January 7, 2010 Memorandum would be harmless in light of the fact that the DHO considered the Memorandum in her decision-making process. *See Howard*, 487 F.3d at 813–14 (harmless error rule applies to exclusion of videotape evidence and witness testimony); *Brennan v. United States*, 646 F. App'x 662, 666 (10th Cir. 2016).

Plaintiff also alleges that the DHO was not impartial. "An impartial decisionmaker is a fundamental requirement of due process that is fully applicable in the prison context." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (internal quotation marks omitted). However, Petitioner fails to provide any factual or legal rationale for the allegation that the DHO was not impartial. In order to insure impartiality, a DHO may not be a victim, witness, investigator, or

otherwise significantly involved in the incident. 28 C.F.R. § 541.8(b). In this case, the DHO was a certified DHO who was not personally involved with the incident, the UDC hearing, or any other part of the initial disciplinary process. Petitioner's conclusory allegation that the DHO was not impartial is without merit and insufficient to demonstrate a denial of due process.

**4. Some Evidence**

Petitioner also contests the sufficiency of the evidence. Where the due process requirements of *Wolff* are met, as is the case here, the decision of the DHO will be upheld if there is "some evidence" to support the decision. *Hill*, 472 U.S. at 455. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Terry v. Jones*, 259 F. App'x 85, 86 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008) (quoting *Hill*, 472 U.S. at 456). A decision to revoke good time credits would only violate due process if the record is "devoid of evidence, providing no support for a disciplinary board's decision." *Id.* (citing *Hill*, 472 U.S. at 457). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457.

Petitioner alleges that his use of a local phone number for family communication is not a violation of any program statement. He alleges that other inmates contact family or friends through a local phone number without discipline, with the only difference being that he paid for the service out of his inmate funds instead of having family or friends establish the local telephone number. Petitioner also alleges there was no attempt to obscure the number being contacted, and that the FCC has set out that such phone use is nothing more than call routing, a process that takes place in every phone call made by anyone.

The DHO considered all the evidence and found that Petitioner's use of the DIPV Telecom system established unidentifiable local telephone numbers for his telephone list. The DHO noted that Petitioner voluntarily signed up with the service, and that DIPV's characterization that its system is not a call forwarding system is inaccurate as the call is routed over the internet to a different number than the called number. The DHO considered the e-mail correspondence setting up the service; Petitioner's money transfers to DIVP Telecom to pay for the service; records establishing that Petitioner called the numbers; BOP memoranda; and the internet and Lexis Nexis reports indicating that the searches did not identify an end-user for the telephone numbers used by Petitioner.

Petitioner does not deny that he set up, paid for and used the service. Rather, he alleges that he did not know it was against BOP policy. That is certainly understandable in light of the company's representations that its service was compliant. In fact, it appears as though this same practice has generated civil lawsuits against companies representing that their services comply with BOP regulations. *See, e.g., Conner v. Kira Int'l, Inc.*, No. 13CV417(ARR)(LB), 2015 WL 4656530 (E.D.N.Y. July 14, 2015). Adding to the confusion, it appears as though an internet search and a Lexis Nexis search are required to determine whether or not the particular service provider utilized masks the identity of the end user.

Petitioner also argues that the memorandum relied on by the DHO supports his argument that his lack of knowledge that the system violated BOP policy is relevant. The January 7, 2010 Memorandum indicates that when it is identified that telephone services are using VOIP or other similar technology, inmate discipline should be explored. In certain circumstances inmates are unaware that their contacts are using this technology. The memorandum provides guidance that discipline should not be considered for such true "innocent bystanders," and discipline should

not be considered where there is no evidence of the inmate's knowledge of such action by their community contact, or where they have not assisted or facilitated the creation of such telephone numbers. The DHO considered the memorandum, and found Petitioner did not fall within the category of "innocent bystander" because he had knowledge of the use of the service and actively participated in creating it. Petitioner presented no evidence to the DHO that he had sought clarification from BOP staff related to this company or establishing such telephone numbers. *See Garcia v. Zickefoose*, No. 10-752 (RMB), 2010 WL 4366135, at *4 (D.N.J. Oct. 28, 2010) (finding some evidence standard met where DHO found unavailing petitioner's statement that he thought the service was legal and DHO reasoned that "it is an inmate's responsibility to know and abide by the telephone monitoring procedures").

The Court is bound by the "some evidence" standard and finds that the evidence relied upon by the DHO satisfies that standard. "Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56; *see Mitchell*, 80 F.3d at 1445. "The decision can be upheld even if the evidence supporting the decision is 'meager.'" *Mitchel*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457). Thus, the petition will be denied with respect to Petitioner's claim that there was insufficient evidence to support the DHO's decision.

**5. Void for Vagueness**

Respondent suggests that Petitioner may be alleging that Code 297 is unconstitutionally vague, noting that Petitioner's claim is unclear in this regard. To the extent that Petitioner is alleging that the Code 297 is void for vagueness, such argument must fail. The pleading

requirements are more demanding for habeas petitions than ordinary civil complaints. A habeas petitioner must specify all grounds and state supporting facts for each in his petition. In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court explained the habeas pleading requirements as follows:

> Under (FRCP) Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is, and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See also Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S. C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." . . . A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted."

*Mayle*, 545 U.S. at 655–66.

To the extent Petitioner has sufficiently stated a claim challenging the vagueness of Code 297, such claim is denied. A regulation is void for vagueness if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732 (2000) (citation omitted). The Court's analysis should focus on whether or not Code 297 provided "fair warning" of the prohibited conduct. *See Jordan*, 411 F. App'x at 207. By its plain terms, Code 297 prohibits "[u]se of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." 28 C.F.R. § 541.3. The Handbook refers to Code 297 as prohibiting "using the telephone for abuses **other than criminal activity, <u>and</u> which circumvent monitoring procedures**." This

gives fair warning that any call forwarding or routing system that masks the identity of the end user, thereby circumventing monitoring procedures, is prohibited. As stated above, Petitioner was unaware that the particular service he was using masked the end-user's identity. The Handbook encourages inmates to seek clarification of the activity if the inmate has questions or concerns related to the telephone restrictions or potentially improper conduct. The DHO considered Petitioner's defense of lack of knowledge, and sanctioned Plaintiff with disallowance of good conduct time which was actually below the guidelines. (Doc. 7–2 at 10.) The Court finds that the regulation is not unconstitutionally vague.

**6. Violation of APA**

Petitioner argues that the DHO's decision was arbitrary and capricious and an abuse of discretion under 5 U.S.C. § 706(2)(A) of the APA. Petitioner also argues that the DHO extended Code 297 beyond its plain meaning, thereby creating a new regulation without complying with the rule promulgation procedures established in the APA. *See* 5 U.S.C. § 551, *et seq.* Petitioner's claims fail on the merits. Code 297 is part of the BOP's promulgated disciplinary regulations applicable to federal prisoners incarcerated in BOP institutions. *See*, 28 C.F.R. § 541.1, *et seq.* The discipline imposed pursuant to Code 297 is a reflection of the BOP's interpretation of the code violation. The APA's notice and comment procedure does not apply "to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A); *see also Wood v. Samuels*, No. 06-3337(RBK), 2007 WL 1175762, at *4–5 (D.N.J. April 18, 2007) (finding no violation of the APA because Program Statement 5264.07 merely interprets language already contained in the properly promulgated regulations). Petitioner has not shown a violation of the APA.

Petitioner's bare claim of arbitrary and capricious action by the DHO must also be dismissed. Under the APA, a federal court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Certain decisions, however, are exempt from judicial review. Of relevance here is 18 U.S.C. § 3625, which exempts decisions made under 18 U.S.C. §§ 3621–26 from judicial review under the APA. These statutory provisions include the place of a prisoner's incarceration and good time credits. The Tenth Circuit has expressly stated that § 3625 bars review under the APA of the BOP's "substantive disciplinary determinations involving the reduction of good-time credits." *Jordan*, 411 F. App'x at 214.

**IT IS THEREFORE ORDERED BY THE COURT** that this petition for writ of habeas corpus is **denied**.

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas, on this 16th day of December, 2016.**

**s/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**